Youssef H. Hammoud (SBN: 321934)
yh@lawhammoud.com
HAMMOUD LAW, P.C.
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
*Attorneys for Plaintiff*
*Corrine Wilkerson ,individually*
*and on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **CORINNE WILKERSON,** *individually and on behalf of all others similarly situated*, | Case No: 2:22-cv-8588 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| **CREDIT CONTROL SERVICES, INC.** *d/b/a* **CREDIT COLLECTION SERVICES,** | |
| Defendant. | |

- 1 -

Plaintiff Corinne Wilkerson, individually and on behalf of all others similarly situated, by and through the undersigned counsel, complains, states, and alleges against defendant Credit Control Services, Inc. *d/b/a* Credit Collection Services, as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"), the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.* (the "RFDCPA").

2. In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 USC §§ 1692 *et seq.*, in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) and (c).

3. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "ensure that those debt

collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.*, § 1692(e).  After determining that the existing consumer protection laws were inadequate, Congress gave consumers a private cause of action against debt collectors who failed to comply with the Act. *Id.*, § 1692k.

4.     In determining whether a collection letter violates the FDCPA, courts in the Ninth Circuit apply the least sophisticated consumer standard, "[i]f the least sophisticated debtor would likely be misled by a communication from a debt collector, the debt collector has violated the [FDCPA]." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

5.     The FDCPA does not ordinarily require proof of an intentional violation, and is considered a strict liability statute, whereby a single violation is sufficient to establish civil liability against a debt collector.

## JURISDICTION AND VENUE

6.     This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d).   The Court has supplemental jurisdiction of any state law claims pursuant to 28 U.S.C. §1367.

7.     This court has jurisdiction over defendant Credit Control Services, Inc. *d/b/a* Credit Collection Services because it regularly conducts and transacts business in this state, and the conduct complained of herein occurred in this Judicial

District.

8.      Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because a substantial part of the conduct complained of herein occurred in this Judicial District.

## **PARTIES**

9.      Plaintiff Corinne Wilkerson ("Plaintiff") is a natural person who, at all times relevant hereto, was a residing in Los Angeles County, State of California.

10.     Plaintiff is a "consumer" as that term defined by 15 U.S.C. § 1692a(3).

11.     Plaintiff is a "person" as that term is defined by Cal. Civ. Code § 1788.2.(g).

12.     Defendant Credit Control Services, Inc. *d/b/a* Credit Collection Services ("CCS") is a company existing under the laws of the State of Massachusetts, with its principal place of business in Norwood, Massachusetts.

13.     CCS has transacted business within this state as is more fully set forth hereinafter in this Complaint.

14.     CCS regularly collects or attempts to collect debts asserted to be owed to others.

15.     CCS is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

16.     The principal purpose of CCS's businesses is the collection of such

debts.

17.    CCS uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

18.    CCS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

19.    CCS is a "debt collector" as that term is defined by Cal. Civ. Code § 1788.2(c).

20.    The acts of CCS as described in this Complaint were performed by CCS or on CCS's behalf by its owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to "CCS" in this Complaint shall mean CCS or its owners, officers, agents, and/or employees.

**FACTUAL ALLEGATIONS**

21.    CCS alleges Plaintiff owes $1,368.66 to Liberty Mutual ("the alleged Debt").

22.    Plaintiff did not owe $1,368.66 ("the Claimed Amount") to Liberty Mutual ("Liberty Mutual").

23.    Plaintiff did not owe the Claimed Amount to Liberty Mutual.

24.    Plaintiff was not indebted to Liberty Mutual for the Claimed Amount.

25.    Plaintiff did not owe the alleged Debt to Liberty Mutual.

26.     The alleged Debt does not arise from any business enterprise of Plaintiff.

27.     The alleged Debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

28.     At an exact time known only to CCS, the alleged Debt was assigned or otherwise transferred to CCS for collection.

29.     At the time the CCS was hired or otherwise retained, the alleged debt was in default.

30.     However, CCS is a shell company with no employees of its own.

31.     Instead, the employees of a different entity, Enterprise Associates, LLC ("Enterprise"), hold themselves out as employees of CCS.

32.     Enterprise is not a licensed debt collector.

33.     The employees of Enterprise have full access to New York consumers' personal information, including date of birth, social security number, address, phone number, the amount of money allegedly owed, account numbers, places of employment, etc.

34.     In its efforts to collect money from Plaintiff, Enterprise decided to contact Plaintiff by letter.

35.     Rather than preparing and mailing such letter to Plaintiff on its own, Enterprise decided to utilize an additional third-party, Business Ink, Co., to perform such activities.

36.     Business Ink, Co. is located in Austin, Texas.

37.     As part of its utilization of Business Ink, Co., Enterprise conveyed information regarding Plaintiff and the alleged debt to Business Ink, Co. by electronic means.

38.     The information conveyed by Enterprise to Business Ink, Co., which was viewed by employees of Business Ink, Co., contained Plaintiff's personal and private information, including personal identifying data, among other things.

39.     Business Ink, Co. then populated some or all of the information into a prewritten template, printed, and mailed the collection letter to Plaintiff at Enterprise's direction.

40.     That correspondence, dated February 17, 2022, were received and read by Plaintiff (collectively, the "Letter").

41.     The Letter were received and read by Plaintiff.

42.     The acts of CCS as described in this Complaint were performed by CCS or on CCS's behalf by Enterprise.

43.     CCS's conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from CCS's conduct.

44.     In complete disregard for the information it received from Plaintiff that the alleged Debt wasn't owed and disputed, CCS or Enterprise on CCS's behalf continued to send collection letters to Plaintiff in attempt to collect the alleged Debt.

45.     In fact, after having knowledge that the alleged debt is disputed, CCS offered Plaintiff discount to pay the alleged Debt.

46.     The Letter does not provide any details regarding the due date for Plaintiff to accept the discounted offer.

47.     The Letter is completely devoid of any language that provides the Plaintiff how long the discounted offer will remain open.

48.     15 U.S.C. § 1692e protects Plaintiff's concrete interests and rights.

49.     In fact, Plaintiff disputed the alleged Debt with CCS prior to the Letter.

50.     Plaintiff has the interest and right to be free from collection efforts on debts Plaintiff does not owe.

51.     Plaintiff has the interest and right to be free from the fear of being sued on debts Plaintiff does not owe.

- 8 -

52.     Plaintiff has the interest and right to be free from deceptive and/or misleading communications from debt collectors, including CCS.

53.     As set forth herein, CCS deprived Plaintiff of these rights.

54.     Plaintiff's injury is "particularized" and "actual" in that the conduct that deprived Plaintiff of her rights was directed by CCS to Plaintiff specifically.

55.     Plaintiff's injury is directly traceable to CCS's conduct because CCS initiated the communications, and but for CCS's conduct, Plaintiff would not have been deprived of her rights.

56.     Plaintiff has been misled by CCS's conduct.

57.     CCS's conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from CCS's conduct.

58.     Plaintiff justifiably fears that, absent this Court's intervention, CCS will continue to use abusive, deceptive, unfair, and unlawful means in its attempts to collect the alleged Debt and other alleged debts.

59.     Plaintiff justifiably fears that, absent this Court's intervention, CCS will ultimately cause Plaintiff unwarranted economic harm.

60.     Plaintiff justifiably fears that, absent this Court's intervention, CCS will ultimately cause Plaintiff unwarranted harm to Plaintiff's credit rating.

61.    Plaintiff justifiably fears that, absent this Court's intervention, CCS will ultimately cause Plaintiff to be sued for a debt Plaintiff does not owe.

62.    As a result of CCS's conduct, Plaintiff wasted time, was caused to be confused and unsure as to Plaintiff's rights, and ultimately sought counsel and advice causing Plaintiff the risk of incurring damages including reasonable attorneys' fees in reviewing Plaintiff's rights under the law and prosecuting this claim.

63.    As a result of CCS's conduct, Plaintiff's counsel was caused to expend time, energy, and money to investigate Plaintiff's rights under the law and the legitimacy of the alleged Debt.

64.    The deprivation of Plaintiff's rights will be redressed by a favorable decision herein.

65.    A favorable decision herein would redress Plaintiff's injury with money damages.

66.    A favorable decision herein would serve to deter CCS from further similar conduct.

**FIRST COUNT**
**Violation of 15 U.S.C. § 1692c(b) and § 1692f**

67.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

68.     15 U.S.C. § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

69.     The third-party vendor does not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

70.     Plaintiff never consented to CCS's communication with the third-party vendor concerning the alleged Debt.

71.     Plaintiff never consented to CCS's communication with the third-party vendor concerning Plaintiff's personal and/or confidential information.

72.     Plaintiff never consented to CCS's communication with anyone concerning the alleged Debt or concerning Plaintiff's personal and/or confidential information.

73.     Upon information and belief, CCS has utilized a third-party vendor for these purposes thousands of times.

74.     CCS utilizes a third-party vendor in this regard for the sole purpose of maximizing its profits.

75.     CCS utilizes a third-party vendor without regard to the propriety and privacy of the information which it discloses to such third-party.

76.     CCS utilizes a third-party vendor with reckless disregard for the harm to Plaintiff and other consumers that could result from CCS's unauthorized disclosure of such private and sensitive information.

77.     CCS utilizes a third-party vendor with reckless disregard for Plaintiff's right to privacy.

78.     CCS utilizes a third-party vendor with reckless disregard for Plaintiff's right against public disclosure of Plaintiff's private facts.

79.     CCS violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's alleged Debt to the third-party vendor.

80.     15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

81.     The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

82.     CCS disclosed Plaintiff's private and sensitive information to the third-party vendor.

83.     CCS violated 15 U.S.C. § 1692f when it disclosed Plaintiff's private and sensitive information to the third-party vendor.

84.     As relevant here, Congress enacted the FDCPA upon finding that existing laws and procedures for redressing invasions of individual privacy during

the debt collection process were inadequate to protect consumers.   15 U.S.C. § 1692(a)-(b).

85.    Specifically, Congress sought to protect consumers from communications by debt collectors to third parties. *See* S. Rep. No. 95-382, at 4 (1977) *reprinted in* U.S.C.C.A.N. 1695, 1698.

86.    As such, a violation of Section 1692c(b) has a close relationship to an invasion of privacy.

87.    A violation of Section 1692c(b) is an invasion of privacy.

88.    As described herein, CCS violated Section 1692c(b).

89.    As described herein, CCS invaded Plaintiff's privacy.

90.    A violation of Section 1692c(b) also has a close relationship to a public disclosure of private facts.

91.    A violation of Section 1692c(b) is a public disclosure of private facts.

92.    As described herein, CCS violated Section 1692c(b).

93.    As described herein, CCS publicly disclosed Plaintiff's private facts.

94.    For the foregoing reasons, CCS violated 15 U.S.C. §§ 1692c(b) and 1692f and is liable to Plaintiff therefor.

## SECOND COUNT
## Violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10)

95.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

96.    15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

97.    15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

98.    15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

99.    An allegation by a debt collector that a consumer owes a debt to a certain entity when the consumer does not owe a debt to that entity is a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10).

100.   An allegation by a debt collector that a consumer owes a certain amount of money when the consumer does not that amount is a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10).

101.   As previously stated, Plaintiff did not owe the amount CCS alleges is owed by Plaintiff.

102.   The contention that Plaintiff owed the Claimed Amount to Liberty Mutual, when Plaintiff did not owe the Claimed Amount, is a false, misleading, and/or deceptive representation, in violation of 15 U.S.C. § 1692e.

103.   The contention that Plaintiff owed the Claimed Amount to Liberty Mutual, when Plaintiff did not owe the Claimed Amount, is a false representation of the character, amount, or legal status of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

104.   The contention that Plaintiff owed the Claimed Amount to Liberty Mutual, when Plaintiff did not owe the Claimed Amount, is a false representation or deceptive means to collect or attempt to collect the alleged Debt, in violation of 15 U.S.C. § 1692e(10)

105.   For the foregoing reasons, CCS violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10) and is liable to Plaintiff therefor.

## THIRD COUNT
### Violation of 15 U.S.C. §§ 1692e, 1692e(10), and 1692f

106.   Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

107.   15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

108.   15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

109.   15 U.S.C. § 1692f prohibits the use unfair or unconscionable means to collect or attempt to collect any debt.

110.   The Letter offered Plaintiff a discounted offer.

111.   In fact, after having knowledge that the alleged debt is disputed, CCS offered Plaintiff discount to pay the alleged Debt.

112.   The Letter does not provide any details regarding the due date for Plaintiff to accept the discounted offer.

113.   The Letter is completely devoid of any language that provides the Plaintiff how long the discounted offer will remain open.

114.   Upon information and belief, CCS has a pattern and practice of providing consumers discounted offers without providing details regarding a due date or other details of how long the offer will remain open, in violation of 15 U.S.C. §§ 1692e, 1692(10), and 1692f.

115.   For the foregoing reasons, CCS violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f and is liable to Plaintiff therefor.

## **FOURTH COUNT**
## **Violation of Cal. Civ. Code § 1788.12(c)**

116.   Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

117.   Cal. Civ. Code § 1788.12(c) prohibits debt collectors from communicating to any person any list of debtors which discloses the nature or existence of a consumer debt.

118.   Plaintiff never consented to CCS's communication with the third-party vendor concerning the alleged Debt.

119.   Plaintiff never consented to CCS's communication with the third-party vendor concerning Plaintiff's personal and/or confidential information.

120.   Plaintiff never consented to CCS's communication with anyone concerning the alleged Debt or concerning Plaintiff's personal and/or confidential information.

121.   Upon information and belief, CCS has utilized a third-party vendor for these purposes thousands of times.

122.   CCS utilizes a third-party vendor in this regard for the sole purpose of maximizing its profits.

123.   CCS utilizes a third-party vendor without regard to the propriety and privacy of the information which it discloses to such third-party.

124.   CCS utilizes a third-party vendor with reckless disregard for the harm to Plaintiff and other consumers that could result from CCS's unauthorized disclosure of such private and sensitive information.

125.   CCS utilizes a third-party vendor with reckless disregard for Plaintiff's right to privacy.

126.   CCS utilizes a third-party vendor with reckless disregard for Plaintiff's right against public disclosure of Plaintiff's private facts.

127.   CCS's communicating with third parties regarding the nature or existence of the alleged Debt, violates Cal. Civ. Code § 1788.12(c).

128.   For the foregoing reasons, CCS violated Cal. Civ. Code § 1788.12(c) and is liable to Plaintiff therefor.

## CLASS ALLEGATIONS

129.   Plaintiff brings this action individually and as a class action on behalf of all consumers similarly situated in the State of California.

130.   Plaintiff seeks to certify a class of:

   i.   All consumers where CCS sent information concerning the consumer's debt to a third-party vendor without obtaining the prior consent of the consumer, which disclosure was made on or after a date one year prior to the filing of this action to the present.

131.   This class action seeks a finding that CCS's conduct violates the FDCPA and asks that the Court award damages as authorized by 15 U.S.C. § 1692k.

132.   The Class consists of more than thirty-five persons.

133.   Plaintiff's claims are typical of the claims of the Class.   Common questions of law or fact raised by this action affect all members of the Class and predominate over any individual issues.   Common relief is therefore sought on behalf of all members of the Class.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

134.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, and a risk that any adjudications with respect to individual members of the Class would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests. CCS has acted in a manner applicable to the Class as a whole such that declaratory relief is warranted.

135.   Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class is not extraordinarily difficult, and the factual and legal issues raised by this action will not require extended contact with

the members of the Class, because CCS's conduct was perpetrated on all members of the Class and will be established by common proof.   Moreover, Plaintiff has retained counsel experienced in actions brought under consumer protection laws.

## JURY DEMAND

Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered as follows:

a.  Certifying this action as a class action; and

b.  Appointing Plaintiff as Class Representative and Plaintiff's attorneys as Class Counsel; and

c.  Finding CCS's actions violate the FDCPA and RFDCPA; and

d.  Awarding damages to Plaintiff and the Class pursuant to 15 U.S.C. § 1692k; and

e.  Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k, calculated on a "lodestar" basis; and

f.  Awarding damages to Plaintiff pursuant to Cal. Civ. Code § 1788.30(b); and

g.  Awarding Plaintiff's attorneys' fees pursuant to Cal. Civ. Code § 1788.30(c); and

h.  Awarding the costs of this action to Plaintiff; and

i.  Punitive damages to be determined at trial, for the sake of example and punishing Defendant for their malicious conduct, pursuant to Cal. Civ. Code § 3294(a); and

j.  Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

k.  Such other and further relief that the Court determines is just and proper.

DATED: November 23, 2022

By:  s/ Youssef H. Hammoud
Youssef H. Hammoud (SBN: 321934)
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
*Attorneys for Plaintiff*
*Corrine Wilkerson ,individually*
*and on behalf of all others similarly*
*situated*